# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00308-CR

**In re Morris C. Kennard**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 936455, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Morris Kennard appeals the district court's order denying his motion for post-conviction forensic DNA testing. We will affirm the order.

Kennard was convicted of aggravated sexual assault and sentenced to thirty years in prison. The conviction was affirmed on appeal. *See Kennard v. State*, No. 03-94-00258-CR (Tex. App.—Austin May 3, 1995, pet. ref'd) (mem. op., not designated for publication). Because it is relevant to his request for DNA testing, we will briefly summarize the evidence at Kennard's trial, as related in the Court's 1995 opinion.

The complainant testified that she met Kennard at a nightclub. After dancing and drinking together at the club, they went to a nearby apartment to obtain crack cocaine. The complainant said that she was uncomfortable at this location because several men were there, and one of the men asked her if she would exchange sex for drugs. After purchasing some crack, Kennard and the complainant drove to Kennard's apartment, where they smoked the cocaine, drank

beer, listened to music, and talked. Kennard began to make sexual advances toward the complainant and when she resisted, he pushed her onto a bed and began to rip off her clothes. He put a belt around her arm and tightened it until the blood circulation to her hand was cut off. When the complainant continued to resist, Kennard put the belt around her neck and tightened it until she temporarily lost consciousness. After sexually assaulting the complainant, Kennard left the apartment. She locked the door behind him and called the police.

Police officers who responded to the complainant's call for help testified that the apartment was in disarray and there was evidence of a struggle. The complainant was hysterical. At the hospital, the examining nurse observed ligature marks on the complainant's neck. Spermatozoa from two different men was found in the complainant's vagina. Tests (not DNA tests) showed that the source of the spermatozoa could have been Kennard and the complainant's fiancé, who had been out of the city for four days when the assault occurred.

Both in a statement to the police and in his own trial testimony, Kennard admitted that he had sexual intercourse with the complainant on the night in question but asserted that it was a consensual act in exchange for crack cocaine. Kennard also said that the complainant performed oral sex on two men at the first apartment, William Wright and Roshaan Trappio, in exchange for cocaine. Trappio refused to testify at Kennard's trial; Wright was not called as a witness. Kennard further testified that he noticed bruises on the complainant's arm, but he did not recall seeing any bruises on her neck. Friends of Kennard who saw him with the complainant at the nightclub testified that they saw bruises on the complainant's arm and that she told them that she was tired of her fiance's abuse.

2

Kennard sought DNA testing of the spermatozoa recovered during the sexual assault examination. By implication, he also requested that a DNA sample be obtained from Trappio for testing.[1] Kennard does not contend that DNA tests would show that he was not one of the contributors of the spermatozoa. Instead, he argues that if the DNA tests showed that the second contributor was Trappio or any man other than the complainant's fiancé, the complainant's credibility would be undermined. Kennard urges that if DNA testing had been available at the time of his trial, and if such testing had shown that the complainant was lying when she denied having sexual intercourse with any other man on the night of the alleged assault, there is at least a fifty-one percent chance that he would not have been convicted. *See Smith v. State*, 165 S.W.3d 361, 365 (Tex. Crim. App. 2005) (holding that under article 64.03(a)(2)(A) as amended in 2003, applicant must show that preponderance of evidence, defined as fifty-one percent chance, supports claim that he would not have been convicted); Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (West Supp. 2007).

The trial court found, among other things, that: (1) Kennard did not dispute having sexual intercourse with the complainant; (2) Kennard's assertion in his testing motion that the complainant "may have had" consensual sexual intercourse with two other men was speculative and without evidentiary support;[2] and (3) evidence that the complainant engaged in consensual sexual

---

[1] Documents attached to the testing motion indicate that Trappio is currently in a Texas prison. Chapter 64 provides for testing of evidence "that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense." Tex. Code Crim. Proc. Ann. art. 64.01(b) (West Supp. 2007). It is not clear whether chapter 64 provides for the gathering of new DNA samples for testing.

[2] The court noted that in his statement to the police and in his trial testimony, Kennard said only that the complainant engaged in oral sex with the other men.

intercourse with other men on the night in question would undermine her credibility, but would not negate the other evidence that she was assaulted. The court concluded that: (1) identity was not an issue in the case, and (2) Kennard had not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B), (2)(A) (West Supp. 2007). Because the court's order was based on the trial record and Kennard's testing motion and supporting documents, we review the issues de novo. *See Smith*, 165 S.W.3d at 363.

### *Was identity an issue?*

A convicting court may order DNA testing only if identity was or is an issue in the case. Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B). Kennard concedes that his identity was and is not an issue, but he argues that the identity of the second spermatozoa contributor is an issue. The State responds that "identity," as used in article 64.03(a)(1)(B), means only the identity of the perpetrator of the offense.

The State's argument is supported by the plain language of the statute, which provides that a convicting court is prohibited from finding that identity was not an issue solely because the defendant pleaded guilty or confessed. Tex. Code Crim. Proc. Ann. art. 64.03(b). It is also noteworthy that by the same act adopting chapter 64, the legislature also enacted the statute providing for the preservation of biological material that would establish the identity of the person who committed the offense or exclude a person from the group of persons who could have committed the offense. Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 1, 2001 Tex. Gen. Laws 2 (current version at Tex. Code Crim. Proc. Ann. art. 38.43 (West Supp. 2007)); *see Newby v. State*,

4

229 S.W.3d 412, 414-15 (Tex. App.—Texarkana 2007, pet. ref'd) (reading chapter 64 and article 38.43 together and holding that DNA testing was not available to determine identity of plant alleged to be marihuana).

Although the court of criminal appeals has not explicitly stated that "identity," as used in article 64.03(a)(1)(B), means the identity of the perpetrator, it has suggested as much. In *Blacklock v. State*, the movant sought DNA testing to determine if he was or was not the lone attacker in a robbery and sexual assault. 235 S.W.3d 231, 232 (Tex. Crim. App. 2007). Noting that test results excluding the movant as the donor of the biological material would establish his innocence, the court observed that "this is precisely the situation in which the Legislature intended to provide post-conviction DNA testing." *Id.* at 232-33. Citing the language and history of article 64.03(a)(1)(B), the court held that a movant "can make identity an issue by showing that exculpatory DNA tests would prove his innocence." *Id.* at 233. The court has also held that a movant is not entitled to DNA testing simply to show the presence of a third person at the crime scene because such evidence, without more, is not exculpatory. *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002).

In *Reger v. State*, the movant admitted shooting the deceased, but he claimed that he acted in self-defense and sought DNA testing to determine whether he or the deceased was the original aggressor. 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd). The court of appeals held that the testing motion was properly denied because there was no issue as to the identity of the perpetrator of the offense, as required by the plain language of the statute. *Id.*

In *Hooks v. State*, the movant did not deny driving the truck that struck and killed the deceased, but sought testing to prove his assertion that the police, as part of a conspiracy, switched the DNA samples gathered at the scene. 203 S.W.3d 861, 863 (Tex. App.—Texarkana 2006, pet. ref'd). The court of appeals held that identity was not an issue, refusing to broaden the scope of article 64.03(a)(1)(B) in the manner urged by the movant. *Id*. at 864.

In *Lewis v. State*, the movant admitted having sexual intercourse with the minor complainant, but sought DNA testing to prove that the complainant was sexually promiscuous. 191 S.W.3d 225, 228 (Tex. App.—San Antonio 2005, pet. ref'd). The court of appeals affirmed the trial court's denial of testing because, among other things, the movant's identity was not an issue. *Id*.

In this case, Kennard admits that he had sexual intercourse with the complainant. DNA tests to determine the identity of the second sperm donor would not exculpate Kennard. The trial court properly denied testing because there was and is no issue as to Kennard's identity as the perpetrator of the sexual assault for which he was convicted.

### Would Kennard have been convicted?

The trial court was also correct in concluding that Kennard had not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. First, as previously discussed, proving that the second donor was not the complainant's fiancé would not exculpate Kennard. Further, Kennard testified that the complainant had oral sex with the other men; he did not testify that she had sexual intercourse with them. Thus, DNA evidence showing that the spermatozoa was from a third man would not have

6

seriously undermined the complainant's claim that she did not have sexual intercourse with any other man on the night in question.

There was, as the trial court found, other evidence tending to corroborate the complainant's testimony that she was physically and sexually assaulted: the condition of Kennard's apartment when the police arrived, the complainant's emotional state, and the ligature marks on the complainant's neck. The jury knew that the complainant had had sexual intercourse with another person. Kennard has not met his burden of proving that he would not have been convicted of sexual assault if there had been DNA evidence showing that the other person was not the complainant's fiancé.

The order denying forensic DNA testing is affirmed.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: April 3, 2008

Do Not Publish

7